

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

FILED

SEP 2 2 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | | |
|---|---|---|
| 1 | CHRISTIAN ANDRADE | ) |
| 2 | CAMILLE BARNETT | ) |
| 3 | JAMES COYNE | ) |
| 4 | PATRICE LONGSHAW | ) |
| 5 | LAWRENCE MAEBA | ) |
| 6 | MONICA ROMERO | ) |
| 7 | DONNIE SHIM | ) |
| 8 | HYUN SONG | ) |
| 9 | FREDDIE THOMPSON | ) |
| 10 | MARK WHIPPLE | ) |

Civil Action No. 2:11cv523

Plaintiffs,

v.

SHAPIRO & BURSON, LLP,
and
PROFESSIONAL FORECLOSURE
CORPORATION OF VIRGINIA,

Defendants.

## INTRODUCTION

COME NOW the Plaintiffs, by counsel, and as for their Complaint against the Defendants, they allege as follows:

1.  This is an action seeking damages arising from Defendants' unlawful attempts to collect delinquent home mortgage debts allegedly owed by Plaintiffs. Plaintiffs allege that Defendants, a debt collection law firm and the purported substitute trustee under the Deed of Trust engaged in numerous violations of federal law in that they: 1) initiated foreclosure activities when they had no present right to possession of the properties, 2) knowingly made a series of false statements and representations in connection with the collection of the debts and of the alleged foreclosure or attempted

foreclosure on Plaintiffs' homes, and 3) failed to identify the names of the creditors to whom the alleged debts were owed, all in violation of the Federal Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. Plaintiffs further allege that, to the extent that any of the named Defendants were validly and properly appointed as Substitute Trustees, such Defendants breached their fiduciary duties as trustees under the Deeds of Trusts by acting in a manner that conflicted with the interests of Plaintiffs, failing to undertake necessary actions regarding the alleged foreclosure sales and notice of the alleged foreclosure sales as required under the Deeds of Trusts and by law, and by exceeding the scope of their authority. Furthermore, Plaintiffs allege that Defendants acted fraudulently in that they knowingly made a series of false statements and representations in connection with the collection of the debts and of the alleged foreclosures on Plaintiffs' homes in their efforts to rush them through the foreclosure process. The Defendants each receive monetary benefit from doing so, including, but not limited to, incentive payments from the alleged mortgage servicers for the speed with which they are able to conduct foreclosures in some cases. The Defendants are rated and audited to ensure that they carry out sales within timing parameters set forth in their contracts with mortgage servicing entities and/or investors. Finally, Plaintiffs allege that Defendants engaged in a civil conspiracy to violate Virginia and Federal law.

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1367 and 15 U.S.C. § 1692k(d).

## PARTIES

2

3.  Plaintiffs are natural persons who at all times relevant hereto were consumers within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3).

4.  Defendant Shapiro & Burson, LLP (hereafter "Shapiro and Burson") is a law firm, the principal purpose of whose business is the collection of debts, and is located at 236 Clearfield Avenue, Suite 215, Virginia Beach, Virginia 23462.

5.  Defendant Professional Foreclosure Corporation of Virginia is a corporation, the principal purpose of whose business is the collection of debts and/or foreclosure of

matters related to loan servicing throughout all of Virginia, Maryland, and the District of Columbia.[1]

12.    Defendant Professional Foreclosure Corporation of Virginia is a corporation specializing in the collection of debts and the foreclosure of properties for which it purports to be a substitute trustee.

13.    Defendants regularly collect home loan debts.

14.    Defendants regularly demand payment from consumers of alleged arrearages and also provide to consumers reinstatement quotes and itemizations of amounts they are attempting to collect.

15.    Defendants regularly tell consumers in correspondences that "this is an attempt to collect a debt and any information obtained will be used for that purpose" and/or that the communication is from a debt collector.

16.    Further, in Defendants' advertisements of the alleged foreclosure sales, they state that "this communication is from a debt collector."

17.    Defendants regularly attempt to provide the verification of debts required by the FDCPA, at 15 U.S.C. § 1692g(b), upon written request from consumers, and they state that they are doing so.

### *Defendants Are "Appointed" to Collect a Debt*

18.    Defendants sent various correspondences to the Plaintiffs attempting to collect the alleged debts and further threatened that if the amounts demanded were not paid, they would conduct alleged foreclosure sales.

---

[1] *See* http://www.bursonlaw.com/html/attorneys_fairfax.htm

19.   One such correspondence to Plaintiffs indicated that Plaintiffs were in default and that the holders of Plaintiffs' loans had referred the loans to the law firm.   Upon information and belief, the stated entities were not the Noteholders of Plaintiffs' loans at the time the letters were prepared.

20.   The correspondences further stated that the promissory Notes or other evidence of the indebtedness were "unavailable" at that time.   These statements were false.

21.   The Defendants' letters sent to Plaintiffs included a notice, which stated:

> THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. NO DEBT COLLECTION ATTEMPT WILL BE MADE IN VIOLATION OF THE AUTOMATIC STAY OF 11 U.S.C. SECTION 362(a), OR OF ANY BANKRUPTCY DISCHARGE OR BANKRUPTCY COURT ORDER

22.   The letters were sent with the letterhead of Shapiro and Burson and did not include the names of the owners of the mortgage debts, nor was any notice with such information sent to Plaintiffs within five (5) days of the initial correspondences.

23.   Defendants' later correspondences to Plaintiffs stated that Plaintiffs' homes would be foreclosed and sold unless Plaintiffs paid the entire balance Defendants claimed was due on the Notes, in full, to Shapiro and Burson prior to the date of the alleged foreclosure sales.

24.   In these correspondences, Plaintiffs were specifically directed to make the payments to Shapiro and Burson, not to their mortgage lenders.

25.   The correspondences to Plaintiffs further included notices of the scheduled alleged foreclosure sales and included the alleged Appointment of Substitute Trustees documents.

26.  The Appointment of Substitute Trustees documents stated that various loan servicing companies or other entities were the Noteholders of Plaintiffs' mortgage loans. Upon information and belief, these statements were false.

27.  The Appointment of Substitute Trustees documents further stated that these "Noteholders" had appointed Defendant Professional Foreclosure Corporation of Virginia as "Substitute Trustee."

28.  With respect to Plaintiffs Andrade, Longshaw, Maeba, Shim and Whipple, a person named Leanna Kennebeck signed the Appointment of Substitute Trustees documents as "Attorney-in-Fact" for the purported Noteholders. Upon information and belief, Leanna Kennebeck is the Director of Operations of Shapiro and Burson.[2] Therefore, Defendant Shapiro and Burson essentially attempted to appoint itself, through its employees, as the trustee.

29.  The Appointment of Substitute Trustees documents for the remaining Plaintiffs were signed by various "representatives" of the purported Noteholders, or a claimed "Attorney-in-Fact" for the purported Noteholder.

30.  The Appointment of Substitute Trustees documents were thereafter allegedly notarized, many times on a later date than that of the document itself.

31.  Defendants claim that the Appointment of Substitute Trustees documents gives them the authority to foreclose on Plaintiffs' homes, by appointing them as substitute trustees.

32.  Upon information and belief, the individuals who signed any sworn statements on behalf of or as representatives of the "Noteholders" and the individuals who thereafter

---

[2] *See* http://www.bursonlaw.com/html/overview_history.htm.

allegedly notarized these Appointment of Substitute Trustees documents purporting to have personal knowledge of the facts contained in the sworn statements or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them, did not do so personally.

33.     At no time did the purported Substitute Trustee, Defendant Professional Foreclosure Corporation of Virginia, actually provide the requisite notice of the alleged foreclosure sales in a manner that complied with Virginia law.

34.     Furthermore, upon information and belief, a continuity of ownership exists between Defendant Professional Foreclosure Corporation of Virginia and Defendant Shapiro and Burson.  Further, its shareholders, executives, and/or officers consist of many of the same persons employed by Shapiro and Burson.  Neither is therefore an impartial or neutral "substitute trustee."

### Defendants Foreclose on Plaintiffs' Homes
### (Plaintiffs 1, 7, and 10 Only)

35.     Defendants' correspondences to Plaintiffs stated that Plaintiffs' homes would be foreclosed and sold unless Plaintiffs paid the entire balance Defendants claimed was due on the Notes, in full, to Shapiro and Burson prior to the date of the alleged foreclosure sale.

36.     Notices of the alleged foreclosure sales were advertised in newspapers as Professional Foreclosure Corporation of Virginia's trustee sales under the care of Shapiro and Burson.

37.     Upon information and belief, Defendants sold Plaintiffs' homes without ever seeing the underlying promissory Notes.

38.     Once the alleged foreclosures took place as scheduled, trustee's deeds (hereafter the "Trustee's Deeds"), which were subsequently filed in the Circuit Courts where the property was located, purported to convey the properties to various Grantees.

39.     The Trustee's Deeds named Professional Foreclosure Corporation of Virginia as the Substitute Trustee and the grantor of the properties.

40.     The Trustee's Deeds further indicated that Professional Foreclosure Corporation of Virginia was the holder of the underlying Notes at the time the documents were prepared.  Upon information and belief, these statements were false.

41.     Upon information and belief, the individuals who signed the sworn statements in the Trustee's Deeds on behalf of Professional Foreclosure Corporation of Virginia or who thereafter allegedly notarized the document, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them, did not do so personally.

### Count I: Violations of the FDCPA, 15 U.S.C. § 1692g(a)(2)

42.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

43.     Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a)(2) by their actions, which include, but are not limited to failing to disclose to Plaintiffs the creditor(s) to whom the debts were owed within five days after their initial communication with Plaintiffs.

44.     As a result, Plaintiffs are therefore entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Defendants pursuant to 15 U.S.C. § 1692k.

### Count II: Violations of the FDCPA, 15 U.S.C. § 1692e(2)(A)

45.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

46.     Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A) by their actions, which include, but are not limited to, the false representation of the character, amount or legal status of any debt.

47.     As a result, Plaintiffs are entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Defendants pursuant to 15 U.S.C. § 1692k.

### Count III: Violations of the FDCPA, 15 U.S.C. § 1692e(2)(B)

48.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

49.     Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(B) by their actions, which include, but are not limited to, the false representation of any services rendered or compensation that may be lawfully received by any debt collector for the collection of a debt.

50.     As a result, Plaintiffs are entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Defendants pursuant to 15 U.S.C. § 1692k.

### Count IV: Violations of the FDCPA, 15 U.S.C. § 1692e(5)

51.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

52.    Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(5) by their actions, which include, but are not limited to, the threat to take any action that cannot legally be taken or that is not intended to be taken.

53.    As a result, Plaintiffs are entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Defendants pursuant to 15 U.S.C. § 1692k.

**Count V: Violations of the FDCPA, 15 U.S.C. § 1692e(10)**

54.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

55.    Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(10) by their actions, which include, but are not limited to, the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

56.    As a result, Plaintiffs are entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Defendants pursuant to 15 U.S.C. § 1692k.

**Count VI: Violations of the FDCPA, 15 U.S.C. § 1692f(1)**

57.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

58.   Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1) by their actions, which include, but are not limited to, the collection of any amount not expressly authorized by the agreement creating the debt or permitted by law.

59.   As a result, Plaintiffs are entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Defendants pursuant to 15 U.S.C. § 1692k.

### Count VII: Violations of the FDCPA, 15 U.S.C. § 1692f(6)(A)

60.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

61.   Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(6)(A) by their actions, which include, but are not limited to, taking or threatening to take any nonjudicial action to effect dispossession or disablement of property when there was no present right to possession of the property claimed as collateral through an enforceable security interest.

62.   As a result, Plaintiffs are entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against Defendants pursuant to 15 U.S.C. § 1692k.

### Count VIII:  Trustees' Breach of Fiduciary Duties

63.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

64.   Plaintiffs allege a cause of action for Defendants' breach of its fiduciary duties.

65.  To the extent that they were properly appointed as trustees, Defendants were the fiduciaries for both the Plaintiffs and the Noteholders, thus owing fiduciary duties to both parties.

66.  Defendants breached their fiduciary duties to the Plaintiffs by knowingly failing to act impartially, failing to undertake necessary actions regarding the alleged foreclosure sales or attempted sales and notice of the alleged foreclosure sale, and by exceeding the scope of their authority.

67.  As a result, Plaintiffs suffered injury and are entitled to recover actual damages and costs against Defendants.

68.  Additionally, because Defendants' actions were willful, Plaintiffs are entitled to recover punitive damages for such amount as the trier of fact may determine.

### Count IX: Fraud
### (Plaintiff Andrade Only)

69.  Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

70.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

71.  Defendants made a material false representation in Plaintiff Andrade's Appointment of Substitute Trustees document filed in the Fairfax County Circuit Court, including but not limited to, that it had knowledge that BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP (hereafter "BAC Home Loans Servicing") was the current Noteholder of Plaintiff's mortgage.

72.  Upon information and belief, Defendants further misrepresented that the individual who signed the Appointment of Substitute Trustees document as "Attorney-in-Fact"

for BAC Home Loans Servicing, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.   In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves, at which time it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged officer.

73. Upon information and belief, Defendants also misrepresented that the individual who allegedly notarized the Appointment of Substitute Trustees document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

74. Defendants made a material false representation in Plaintiff Andrade's Trustee's Deed filed in the Fairfax County Circuit Court, including but not limited to, that Professional Foreclosure Corporation of Virginia was the current Noteholder of Plaintiff's mortgage.

75. Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Professional Foreclosure Corporation of Virginia purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

76. Upon information and belief, Defendants further misrepresented that the individual who allegedly notarized the Trustee's Deed, purporting to have personal knowledge

of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

77. In their correspondence to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that Plaintiff's underlying Note or evidence of indebtedness was "unavailable" at that time.

78. In their correspondences to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that it had knowledge that BAC Home Loans Servicing was the current Noteholder of Plaintiff's mortgage.

79. Defendants intentionally made these misrepresentations to Plaintiff with intent to mislead him into believing these representations were true, and Plaintiff relied on such misrepresentations to his detriment.

80. As a result of the Defendants' misrepresentations, the Plaintiff suffered injury and is entitled to recover actual damages and costs against the Defendants.

81. Plaintiff also suffered substantial unliquidated and noneconomic damages in the form of damage to his reputation, loss of his time and his ongoing emotional distress over the loss of his home.

82. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to recover punitive damages for such amount as the trier of fact may determine.

### Count X:  Fraud
**(Plaintiff Barnett Only)**

83. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

84.     Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

85.     Defendants made a material false representation in Plaintiff Barnett's Appointment of Substitute Trustees document filed in the Circuit Court of Prince William County, including but not limited to, that it had knowledge that Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") was the current Noteholder of Plaintiff's mortgage.

86.     Upon information and belief, Defendants further misrepresented that the individual who signed the Appointment of Substitute Trustees document on behalf of MERS purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.  In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves or forwarded it to an entity that purported to be the claimed Noteholder, where it was signed by a natural person who claimed to be the named officer of that servicer, and where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged officer.

87.     Upon information and belief, Defendants also misrepresented that the individual who allegedly notarized the Appointment of Substitute Trustees document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

88.     In their correspondence to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that Plaintiff's underlying Note or evidence of indebtedness was "unavailable" at that time.

89.     In their correspondences to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that it had knowledge that MERS was the Noteholder of Plaintiff's mortgage.

90.     Defendants intentionally made these misrepresentations to Plaintiff with intent to mislead her into believing that these representations were true, and Plaintiff relied on such misrepresentations to her detriment.

91.     As a result of the Defendants' misrepresentations, the Plaintiff suffered injury and is entitled to recover actual damages and costs against the Defendants.

92.     Plaintiff also suffered substantial unliquidated and noneconomic damages in the form of damage to her reputation, loss of her time and her ongoing emotional distress over the potential loss of her home.

93.     Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to recover punitive damages for such amount as the trier of fact may determine.

### Count XI: Fraud
### (Plaintiff Coyne Only)

94.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

95.     Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

96.   Defendants made a material false representation in Plaintiff Coyne's Appointment of Substitute Trustees document filed in the Fairfax County Circuit Court, including but not limited to, that it had knowledge that JPMorgan Chase Bank, National Association (hereafter "JPMorgan Chase Bank") was the current Noteholder of Plaintiff's mortgage.

97.   Upon information and belief, Defendants further misrepresented that the individual who signed the Appointment of Substitute Trustees document as "Attorney-in-Fact" for JPMorgan Chase Bank, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.  In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves or forwarded it to an entity that purported to be the claimed Noteholder, where it was signed by a natural person who claimed to be the named officer of that servicer, and where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged officer.

98.   Upon information and belief, Defendants also misrepresented that the individual who allegedly notarized the Appointment of Substitute Trustees document, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

99.    In their correspondence to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that Plaintiff's underlying Note or evidence of indebtedness was "unavailable" at that time.

100.   In their correspondences to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that it had knowledge that JPMorgan Chase Bank was the current Noteholder of Plaintiff's mortgage.

101.   Defendants intentionally made these misrepresentations to Plaintiff with intent to mislead him into believing these representations were true, and Plaintiff relied on such misrepresentations to his detriment.

102.   As a result of the Defendants' misrepresentations, the Plaintiff suffered injury and is entitled to recover actual damages and costs against the Defendants.

103.   Plaintiff also suffered substantial unliquidated and noneconomic damages in the form of damage to his reputation, loss of his time and his ongoing emotional distress over the potential loss of his home.

104.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to recover punitive damages for such amount as the trier of fact may determine.

### Count XII: Fraud
### (Plaintiff Longshaw Only)

105.   Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

106.   Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

18

107.    Defendants made a material false representation in Plaintiff Longshaw's Appointment
        of Substitute Trustees document filed in the Circuit Court of Prince William County,
        including but not limited to, that it had knowledge that Nationstar Mortgage, LLC
        (hereafter "Nationstar Mortgage") was the current Noteholder of Plaintiff's mortgage.

108.    Upon information and belief, Defendants further misrepresented that the individual
        who signed the Appointment of Substitute Trustees document as "Attorney-in-Fact"
        for Nationstar Mortgage, purporting to have personal knowledge of the facts
        contained in the sworn statement or the legal standing to take the actions described
        therein, did have such personal knowledge or such legal standing.   In reality, the
        Defendants prepared the substitute trustee appointment document and signed it
        themselves, at which time it was notarized by someone who claimed to be the notary
        whose stamp appeared on the page and who claimed to have witnessed the signature
        of the alleged officer.

109.    Upon information and belief, Defendants also misrepresented that the individual who
        allegedly notarized the Appointment of Substitute Trustees document, purporting to
        have personal knowledge of the facts contained in the sworn statement or the legal
        standing to take the actions described therein, did have such personal knowledge or
        such legal standing.

110.    In their correspondence to Plaintiff, Defendants made one or more material
        misrepresentations, including but not limited to, that Plaintiff's underlying Note or
        evidence of indebtedness was "unavailable" at that time.

111.    In their correspondences to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that it had knowledge that Nationstar Mortgage was the current Noteholder of Plaintiff's mortgage.

112.    Defendants intentionally made these misrepresentations to Plaintiff with intent to mislead her into believing the representations were true, and Plaintiff relied on such misrepresentations to her detriment.

113.    As a result of the Defendants' misrepresentations, the Plaintiff suffered injury and is entitled to recover actual damages and costs against the Defendants.

114.    Plaintiff also suffered substantial unliquidated and noneconomic damages in the form of damage to her reputation, loss of her time and her ongoing emotional distress over the potential loss of her home.

115.    Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to recover punitive damages for such amount as the trier of fact may determine.

### Count XIII: Fraud
### (Plaintiff Maeba Only)

116.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

117.    Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

118.    Defendants made a material false representation in Plaintiff Maeba's Appointment of Substitute Trustees document, including but not limited to, that it had knowledge that Countrywide Home Loans Servicing, LP (hereafter "Countrywide Home Loans Servicing") was the current Noteholder of Plaintiff's mortgage.

20

119. Upon information and belief, Defendants further misrepresented that the individual who signed the Appointment of Substitute Trustees document as "Attorney-in-Fact" for Countrywide Home Loans Servicing, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.   In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves, at which time it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged officer.

120. Upon information and belief, Defendants further misrepresented that the individual who allegedly notarized the Appointment of Substitute Trustees document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

121. In their initial correspondence to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that Plaintiff's underlying Note or evidence of indebtedness was unavailable at that time.

122. In their correspondences to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that it had knowledge that Countrywide Home Loans Servicing was the current Noteholder of Plaintiff's mortgage.

123. Defendants intentionally made these misrepresentations to Plaintiff with intent to mislead him into believing these representations were true, and Plaintiff relied on such misrepresentations to his detriment.

124. As a result of the Defendants' misrepresentations, the Plaintiff suffered injury and is entitled to recover actual damages and costs against the Defendants.

125. Plaintiff also suffered substantial unliquidated and noneconomic damages in the form of damage to his reputation, loss of his time and his ongoing emotional distress over the potential loss of his home.

126. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to recover punitive damages for such amount as the trier of fact may determine.

### Count XIV: Fraud
### (Plaintiff Romero Only)

127. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

128. Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

129. In their correspondence to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that Plaintiff's underlying Note or evidence of indebtedness was "unavailable" at that time.

130. In their correspondences to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that it had knowledge that Bank of America, N.A. was the current Noteholder of Plaintiff's mortgage.

131.   Defendants intentionally made these misrepresentations to Plaintiff with intent to mislead her into believing the representations were true, and Plaintiff relied on such misrepresentations to her detriment.

132.   As a result of the Defendants' misrepresentations, the Plaintiff suffered injury and is entitled to recover actual damages and costs against the Defendants.

133.   Plaintiff also suffered substantial unliquidated and noneconomic damages in the form of damage to her reputation, loss of her time and her ongoing emotional distress over the potential loss of her home.

134.   Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to recover punitive damages for such amount as the trier of fact may determine.

### Count XV: Fraud
### (Plaintiff Shim Only)

135.   Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

136.   Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

137.   Defendants made a material false representation in Plaintiff Shim's Appointment of Substitute Trustees document filed in the Fairfax County Circuit Court, including but not limited to, that it had knowledge that Chase Home Finance LLC (hereafter "Chase Home Finance") was the current Noteholder of Plaintiff's mortgage.

138.   Upon information and belief, Defendants further misrepresented that the individual who signed the Substitution of Trustee document as "Attorney-in-Fact" for Chase Home Finance, purporting to have personal knowledge of the facts contained in the

sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves, at which time it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged officer.

139.   Upon information and belief, Defendants also misrepresented that the individual who allegedly notarized the Appointment of Substitute Trustees document, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

140.   Defendants made a material false representation in the Trustee's Deed filed in the Fairfax County Circuit Court, including but not limited to, that Professional Foreclosure Corporation of Virginia was the current Noteholder of Plaintiff's mortgage.

141.   Upon information and belief, Defendants further misrepresented that the individual who signed the Trustee's Deed on behalf of Professional Foreclosure Corporation of Virginia, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

142.   Upon information and belief, Defendants also misrepresented that the individual who allegedly notarized the Trustee's Deed, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

24

143.    In their correspondence to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that Plaintiff's underlying Note or evidence of indebtedness was "unavailable" at that time.

144.    In their correspondences to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that it had knowledge that Chase Home Finance was the current Noteholder of Plaintiff's mortgage.

145.    Defendants intentionally made these misrepresentations to Plaintiff with intent to mislead him into believing these representations were true, and Plaintiff relied on such misrepresentations to his detriment.

146.    As a result of the Defendants' misrepresentations, the Plaintiff suffered injury and is entitled to recover actual damages and costs against the Defendants.

147.    Plaintiff also suffered substantial unliquidated and noneconomic damages in the form of damage to his reputation, loss of his time and his ongoing emotional distress over the loss of his home.

148.    Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to recover punitive damages for such amount as the trier of fact may determine.

### Count XVI:  Fraud
### (Plaintiff Song Only)

149.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

150.    Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

151.   Defendants made a material false representation in Plaintiff Song's Appointment of Substitute Trustees document filed in the Fairfax County Circuit Court, including but not limited to, that it had knowledge that "Regions Bank DBA Regions Mortgage, Successor by Merger to Union Planters Bank, N.A." (hereafter "Regions Bank") was the current Noteholder of Plaintiff's mortgage. There is no entity named "Regions Bank DBA Regions Mortgage, Successor by Merger to Union Planters Bank, N.A." that could possibly be the current Noteholder.

152.   Upon information and belief, Defendants further misrepresented that the individual who signed the Appointment of Substitute Trustees document on behalf of the purported Noteholder, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves or forwarded it to an entity that purported to be the claimed Noteholder, where it was signed by a natural person who claimed to be the named officer of that servicer, and where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged officer.

153.   Upon information and belief, Defendants also misrepresented that the individual who allegedly notarized the Appointment of Substitute Trustees document, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

154.  In their correspondence to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that Plaintiff's underlying Note or evidence of indebtedness was "unavailable" at that time.

155.  In their correspondences to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that it had knowledge that Regions Bank was the current Noteholder of Plaintiff's mortgage.

156.  Defendants intentionally made these misrepresentations to Plaintiff with intent to mislead him into believing these representations were true, and Plaintiff relied on such misrepresentations to his detriment.

157.  As a result of the Defendants' misrepresentations, the Plaintiff suffered injury and is entitled to recover actual damages and costs against the Defendants.

158.  Plaintiff also suffered substantial unliquidated and noneconomic damages in the form of damage to his reputation, loss of his time and his ongoing emotional distress over the potential loss of his home.

159.  Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to recover punitive damages for such amount as the trier of fact may determine.

### Count XVII: Fraud
### (Plaintiff Thompson Only)

160.  Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

161.  Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

162.    Defendants made a material false representation in Plaintiff Thompson's Appointment of Substitute Trustees document filed in the Prince William County Circuit Court, including but not limited to, that it had knowledge that OneWest Bank, FSB (hereafter "OneWest Bank") was the current Noteholder of Plaintiff's mortgage.

163.    Upon information and belief, Defendants further misrepresented that the individual who signed the Appointment of Substitute Trustees document on behalf of OneWest Bank, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.  In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves or forwarded it to an entity that purported to be the claimed Noteholder, where it was signed by a natural person who claimed to be the named officer of that servicer, and where it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged officer.

164.    Upon information and belief, Defendants also misrepresented that the individual who allegedly notarized the Appointment of Substitute Trustees document, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

165.    In their correspondence to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that Plaintiff's underlying Note or evidence of indebtedness was "unavailable" at that time.

166.    In their correspondences to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that it had knowledge that OneWest Bank was the current Noteholder of Plaintiff's mortgage.

167.    Defendants intentionally made these misrepresentations to Plaintiff with intent to mislead him into believing these representations were true, and Plaintiff relied on such misrepresentations to his detriment.

168.    As a result of the Defendants' misrepresentations, the Plaintiff suffered injury and is entitled to recover actual damages and costs against the Defendants.

169.    Plaintiff also suffered substantial unliquidated and noneconomic damages in the form of damage to his reputation, loss of his time and his ongoing emotional distress over the potential loss of his home.

170.    Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to recover punitive damages for such amount as the trier of fact may determine.

## Count XVIII: Fraud
### (Plaintiff Whipple Only)

171.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

172.    Plaintiff alleges a cause of action for actual and/or constructive fraud under the common law of the Commonwealth of Virginia.

173.    Defendants made a material false representation in Plaintiff Whipple's Appointment of Substitute Trustees document filed in the Fairfax County Circuit Court, including but not limited to, that it had knowledge that BAC Home Loans Servicing, LP FKA

Countrywide Home Loans Servicing, LP (hereafter "BAC Home Loans Servicing") was the current Noteholder of Plaintiff's mortgage.

174. Upon information and belief, Defendants further misrepresented that the individual who signed the Appointment of Substitute Trustees document as "Attorney-in-Fact" for BAC Home Loans Servicing, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing. In reality, the Defendants prepared the substitute trustee appointment document and signed it themselves, at which time it was notarized by someone who claimed to be the notary whose stamp appeared on the page and who claimed to have witnessed the signature of the alleged officer.

175. Upon information and belief, Defendants also misrepresented that the individual who allegedly notarized the Appointment of Substitute Trustees document, purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

176. Defendants made a material false representation in Plaintiff's Trustee's Deed filed in the Fairfax County Circuit Court, including but not limited to, that Professional Foreclosure Corporation of Virginia was the current Noteholder of Plaintiff's mortgage.

177. Upon information and belief, Defendants further misrepresented that the individual that signed the Trustee's Deed on behalf of Professional Foreclosure Corporation of Virginia as Substitute Trustee, purporting to have personal knowledge of the facts

contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

178. Upon information and belief, Defendants further misrepresented that the individual who allegedly notarized the Trustee's Deed purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did have such personal knowledge or such legal standing.

179. In their correspondence to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that Plaintiff's underlying Note or evidence of indebtedness was "unavailable" at that time.

180. In their correspondences to Plaintiff, Defendants made one or more material misrepresentations, including but not limited to, that it had knowledge that BAC Home Loans Servicing was the current Noteholder of Plaintiff's mortgage.

181. Defendants intentionally made these misrepresentations to Plaintiff with intent to mislead him into believing these representations were true, and Plaintiff relied on such misrepresentations to his detriment.

182. As a result of the Defendants' misrepresentations, the Plaintiff suffered injury and is entitled to recover actual damages and costs against the Defendants.

183. Plaintiff also suffered substantial unliquidated and noneconomic damages in the form of damage to his reputation, loss of his time and his ongoing emotional distress over the loss of his home.

184. Additionally, because Defendants' actions were willful and with knowledge of their untruthfulness or with conscious disregard for Plaintiff's rights, Plaintiff is entitled to recover punitive damages for such amount as the trier of fact may determine.

## Count XIX:  Civil Conspiracy

185.  Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

186.  Plaintiffs allege a cause of action for civil conspiracy under the common law of the Commonwealth of Virginia.

187.  Defendants, separate entities and/or persons, accomplished, through concerted action and a preconceived plan and unity of design and purpose, actions including but not limited to, the attempted or actual collection of alleged debts and/or the attempted or actual foreclosures of Plaintiffs' properties in violation of Virginia and Federal law.

188.  Furthermore, Defendants accomplished, through concerted action and a preconceived plan and unity of design and purpose, actions including, but not limited to, the use of false statements and signatures in their correspondences to Plaintiffs and in court filings in violation of Virginia and Federal law.

189.  The unlawful purpose was to use such fraudulent signatures and sworn statements to make false statements – one that the Defendants knew was false when made – and to proceed in the collection of debts and foreclosures that Defendants knew were not in compliance with the law.

190.  As a result of Defendants' conduct in furtherance of the conspiracy, Plaintiffs suffered injury and are entitled to recover damages including, but not limited to, actual damages and costs against Defendants.

191.  Plaintiffs also suffered substantial unliquidated and noneconomic damages in the form of damage to their reputation, loss of their time and their ongoing emotional distress over the loss of or potential loss of their homes.

192.   Furthermore, Defendants conducted themselves in this manner with intent to defraud and with legal and actual malice as to the Plaintiffs and to the Courts.  Plaintiffs are therefore entitled to, and each Defendant is obligated to pay, punitive damages.

### Count XX:  Conversion

193.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

194.   Plaintiffs allege a cause of action for conversion under the common law of the Commonwealth of Virginia.

195.   Defendant wrongfully exercised dominion and control over certain proceeds of the alleged foreclosure sale, which they were not entitled to receive, thereby depriving Plaintiffs of their ownership rights to the property.

196.   As a result of Defendants' wrongful actions, Plaintiffs suffered injury and are entitled to recover actual damages and costs against Defendants.

197.   Additionally, Defendants' actions were taken with knowledge that they were not entitled to the property and were retained with conscious disregard for Plaintiffs' ownership rights to the property, thus constituting legal and actual malice.  As a result, Plaintiffs are entitled to, and Defendants are obligated to pay punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief:

1.     Award Plaintiffs actual damages;

2.     Award Plaintiffs statutory damages;

3.     Award Plaintiffs punitive damages;

33

4.     Award Plaintiffs reasonable attorney's fees;

5.     Award Plaintiffs costs;

6.     Such other relief the court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFFS**

By _Matthew J Erausq_
Of Counsel

Matthew J. Erausquin, VSB# 65434
Leonard A. Bennett, VSB# 37523
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com
lenbennett@clalegal.com

Dale W. Pittman, VSB# 15673
*Counsel for the Plaintiffs*
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
Tel:    (804) 861-6000
Fax:    (804) 861-3368
dale@pittmanlawoffice.com

Kristi Cahoon Kelly, VSB# 72791
*Counsel for the Plaintiffs*
SUROVELL, ISAACS, PETERSEN & LEVY, PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
Tel:    (703) 277-9774
Fax:    (703) 591-9285
kkelly@siplfirm.com