**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| **CHRISTIAN ANDRADE, et al.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CASE NO. 2:11-CV-523 RBS-DEM** |
| | ) | |
| **SHAPIRO & BURSON, LLP, and** | ) | |
| **PROFESSIONAL FORECLOSURE** | ) | |
| **CORPORATION OF VIRGINIA** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**</u>

Defendants Shapiro & Burson, LLP ("S&B") and Professional Foreclosure Corporation of Virginia ("PFC"), by counsel, hereby submit this memorandum in support of their motion to dismiss the Complaint filed by Plaintiffs, Christian Andrade et al. ("Plaintiffs"), pursuant to Fed.R.Civ.P. 12(b)(6), and in support thereof state as follows:

<u>INTRODUCTION AND BACKGROUND</u>

The present lawsuit challenges the conduct of Defendants S&B and PFC in connection with pre-foreclosure notices and foreclosure sale of properties owned by ten individual plaintiffs. S&B is a law firm, which represents lenders in connection with foreclosure related matters. Compl. at ¶11.  PFC serves as substitute trustee.  Compl. at ¶12. Of the ten plaintiffs, only three properties have been foreclosed. Compl. at ¶35.

The underlying core of Plaintiffs' complaint is premised on their collective challenge to the authority of PFC to conduct the foreclosure sale, and S&B's representation of the respective lender and PFC in connection with such foreclosures.  The gravamen of the lawsuit is the bald allegation that the lender who appointed PFC, was not the holder of the note, Compl. at ¶19, and that S&B and PFC misrepresented their right to foreclose.

Noticeably absent is any assertion as to whom any plaintiff believes was the holder of their loan or person entitled to enforce their loan, any assertion that such "true holder" has made a claim or demand upon plaintiff, or that any of plaintiffs' respective loans were not credited with the foreclosure sale proceeds.  Plaintiffs do not claim not to have been in default of their loans.  Plaintiffs do not claim that any of their respective lenders did not intend to proceed with foreclosure, or did not authorize such foreclosure.  Indeed, several of the Plaintiffs had filed for bankruptcy protection, and identified the very same entities as their creditor on their bankruptcy schedules.  Compare Comp. ¶¶96, 130, 151 with Exhibits D, E, F, attached hereto.

Plaintiffs' also attack the lender/secured party's execution of the Appointment of Substitute Trustee (the "Appointment"), attempting to impose requirements non-existent under Virginia's non-judicial foreclosure process, and which have been rejected in Virginia and in other states having similar foreclosure procedures, and further seek to hold Defendants responsible for the claimed defects in the Appointments.  In addition, Plaintiffs also challenge the execution of the Trustees' Deed, again seeking to impose requirements non-existent under Virginia law for acknowledged instruments.

Yet, upon such theories Plaintiffs have presented several claims, including individual fraud claims for each foreclosure (Counts IX through XVIII), only three of which resulted in foreclosure sales, and collective claims for Breach of Fiduciary Duty (Count VIII), Civil Conspiracy (Count XIX), Conversion (Count XX), and alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. (Counts I through VII).  For the reasons that follow, these claims must be dismissed.

PLAINTIFFS' ALLEGATIONS

Plaintiffs present their core theory attacking the appointment of PFC as trustee under the guise of individual fraud counts.  In sum, Plaintiffs claim that the Appointments were not signed by their respective Noteholder, that the signatory of each Appointment lacked "personal knowledge" and/or "standing" to take such action, and that the notary who acknowledged each Appointment also lacked such "knowledge" or "standing."  Based upon such alleged invalidity, Plaintiffs take the position that the Appointment itself constitutes a misrepresentation concerning the efficacy of the foreclosure, and that the foreclosure notices and other documentation they received also constituted misrepresentations.  No dates are pled, and no copies of the referenced documents are attached to the complaint.

Specifically, Plaintiffs assert that the foreclosures were improperly made because "Defendants made a materially false representation" in each of the Appointment of Substitute Trustees that were filed in the land records.  Compl. at   ¶71 (Andrade), ¶85 (Barnett), ¶96 (Coyne), ¶107 (Longshaw), ¶118 (Maeba), ¶130 (Romero), ¶137 (Shim),  ¶151 (Song), ¶162 (Thompson), and ¶173 (Whipple).  Plaintiffs assert that Defendants misrepresented that the entity who made the Appointment was not the current Noteholder of each Plaintiff's respective mortgage.  Compl. at ¶¶71, 85, 96, 107, 118, 130, 137, 151, 162, and 173.  For example, Plaintiff Andrade alleges Defendants made a false representation in the Appointment that BAC Home Loans Servicing was the current Noteholder of Mr. Andrade's mortgage.  Compl. at ¶71.[1]

Plaintiffs also assert that Defendants also misrepresented the identity of the current Noteholder of their mortgage loan in correspondence sent to Plaintiffs, Compl. at ¶¶78, 88, 99,

_____

[1] Notwithstanding their present claims, three Plaintiffs, James Coyne, Monica Romero, and Hyun Song each filed bankruptcy and admitted on their schedules, or otherwise, that the identified noteholder was the secured party under their respective mortgage.  See Exhibits D, E, and G.

110, 121, 130, 143, 154, 165, and 180, and further that 'misrepresented" that the promissory note underlying their mortgage loan, was unavailable, Compl. at ¶¶77, 99, 110, 121, 129, 143, 154, 165, and 179, but also assert that Defendants never saw underlying notes.  Compl. at ¶37.  As indicated, as to the alleged representations, Plaintiffs do not identify the time or date of such representation, or furnish a copy of the challenged correspondence with their lawsuit.  Nor do Plaintiffs indicate how such a statement could be material, how they relied on such statement, or how they were damaged from such statement.

Plaintiffs also attack the Appointments itself.  Notwithstanding that Appointment of Substitute Trustee is an act and not an affidavit, several Plaintiff assert "on information and belief" that Defendants misrepresented that the individual who signed the Appointment of Substitute Trustee as "Attorney in Fact" for their respective Noteholder had "personal knowledge" or "legal standing" to make such appointment.  Compl. at ¶ 72, 86, 97, 108, 119, 138, 152, 163, and 174.  Likewise, these Plaintiff also asserts that the notary who acknowledged the signature of the person who executed the Appointment, lacked personal knowledge or "legal standing" to take such actions.  Compl. at ¶¶73, 87, 98, 109, 120, 139, 153, 162, and 175.

And, where a plaintiff's home has been foreclosed (plaintiffs Andrade, Shim, and Whipple) those plaintiffs attack the respective Trustee's Deed.  Specifically, they assert that Defendants falsely represented in the post-sale trustee's deed that "[PFC] [sic] was the current Noteholder of Plaintiff's mortgage."  Compl. at ¶¶74, 140, and 176.  Further, although a deed is an act of conveyance and not an affidavit, those plaintiffs also assert that the individual who executed the Trustee's Deed lacked personal knowledge or legal standing of the "facts contained in the sworn statement".  Compl. at ¶¶75, 141, and 177.  And again, those plaintiffs assert that the notary who acknowledged the signature of the person who executed the Trustee's Deed,

lacked personal knowledge or "legal standing" to take such actions.  Compl. at ¶¶76, 142, and

178.

Copies of the initial correspondence from S&B, the Appointments, and the Trustees'

Deeds are attached hereto as Exhibits A, B, and C, respectively.[2] The chart below identifies the

date of such document:

| Name | Initial Correspondence[3] | Appointment of Substitute Trustees | Trustees Deed |
|---|---|---|---|
| Christian Andrade | 8/10/2010 | 5/13/2011 | 8/16/2011 |
| Camille Barnett | 7/8/2009 | 7/8/2009 | N/A |
| James Coyne | 7/17/2009 | 7/15/2009 | N/A |
| Patrice Longshaw | 1/19/2011 | 3/1/2011 | N/A |
| Lawrence Maeba | 7/21/2010 | -- | N/A |
| Monica Romero | 7/27/2010 | 8/3/2010 | N/A |
| Donnie Sunbo Shim | 7/23/2010 | 7/23/2010 | 9/14/2010 |
| Hyun Song | 12/14/2010 | 12/20/2010 | N/A |
| Freddie Thompson | 1/27/2011 | 2/14/2011 | N/A |
| Mark Whipple | 5/11/2009 | 8/3/2010 | 10/12/2010 |

[2] In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  See Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 396-397 (4th Cir. W. Va. 2006) ("[T]here are exceptions to the rule that a court may not consider [in determining a motion to dismiss] any documents outside of the complaint. Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.") (citing Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995); Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

[3] If a prior foreclosure was initiated and stopped, a separate initial correspondence may have been sent at such time.

STANDARD OF REVIEW

A complaint must be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Although the Court must accept well-pled allegations in Plaintiffs' Complaint as true, it is not required to accept conclusory factual allegations, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), and cannot assume that "the [plaintiff] can prove facts which [he or she] has not alleged." Orcilla v. Bank of Am., N.A., 2011 U.S. Dist. Lexis 46639, 4-5 (N.D. Cal. Apr. 25, 2011) (quoting Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983). Nor is the Court required to consider unsupported legal conclusions or legal conclusions disguised as factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); Papasan v. Allain, 478 U.S. 265, 286 (1986); Schweikert v. Bank of America, 521 F.3d 285, 288 (4th Cir. 2008); Eastern Shore Markets v. J.D. Associates LTD, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). But "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should…be

exposed at the point of minimum expenditure of time and money by the parties and the court.'" Id. at 558 (citation omitted). Thus, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." Id. (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. 662, 129 S. Ct. at 1949. (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 557). "Determining whether a complaint states a plausible claim for relief will . . .  be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- -but it has not 'show[n]'—'that the pleader is entitled to relief.' Iqbal, 556 U.S. 662, 129 S. Ct. at 1950. In short, while a court must assume the truth of factual allegations, implausible claims of relief are insufficient to withstand a motion to dismiss.  Id. 556 U.S. 662, 129 S. Ct. at 1950; see also Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

For the following reasons, the Complaint fails to meet these threshold pleading requirements, and it should be dismissed with prejudice.

<u>DISCUSSION</u>

**I.      Plaintiffs have not sufficiently alleged viable fraud claims, or any other claim rested upon a challenge to the foreclosure or efficacy of the Appointment. Further, Plaintiffs cannot establish the elements of a valid fraud claim.**

Plaintiffs' allegations fail to properly state a claim(s) for fraud under Virginia law.  To state such a claim, a plaintiff must allege: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." <u>Frank Brunckhorst Co., L.L.C. v. Coastal Atlantic. Inc.</u>, 542 F. Supp. 2d 452, 460 (E.D. Va. 2008) (quoting <u>Winn v. Aleda Constr. Co</u>., 227 Va. 304, 308, 315 S.E.2d 193 (1984)).

As indicated, Plaintiffs fraud claim is premised upon their core contention is that the entity which executed the Appointment was not the note holder, and therefore both the Appointment, and attendant foreclosure proceeding were invalid.  <u>See</u> e.g., Compl. at ¶72.  Not only does such an attack misconstrue Virginia law as to who may foreclose, and the requirements for an Appointment and resulting Trustee's Deed, discussed below, but Plaintiff conclusory statement that the entity which executed the Appointment was not the holder is insufficient of itself, and fails to elevate their claims above the speculative level.

Basic standards of pleading provide that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions" and "[f]actual allegations must be enough to raise a right to relief above the speculative level…." Twombly, 550 U.S. at 555. The standard is even higher where, as here, Plaintiffs allegations are based upon claims of fraud and are therefore governed by Rule 9(b). Accordingly, fraud claims must include "the time, place, and contents of the false representations, as well as the identity of the person making the

misrepresentation and what he obtained thereby." <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999)

Here, the complaint offers no factual assertion as to whom plaintiffs believe is the "true noteholder," or party entitled to execute the Appointment, or even any assertion that some third-party has made a demand upon them under the mortgage loan.  Nor do Plaintiffs plausibly allege the requisite elements of reliance, or damages.  Plaintiffs do not allege reliance on any statement, or in the cases where the property was foreclosed, that they did not receive credit for amounts received from the foreclosure sale.  Where the foreclosure has not occurred, Plaintiffs do not articulate how they were damaged from such statement.  Noteably, no one single plaintiff asserts that their loan was current or that they were not in default.

Moreover, the mere statement that the entity that executed the Appointment "is not the noteholder" constitutes a 'naked assertion' without further factual enhancement.  <u>See</u> <u>Iqbal</u>, 556 U.S. 662, 129 S.Ct. at 1949.  ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").  In other words, merely claiming that the entity "is not the noteholder", which itself is akin to a legal conclusion as to who has the right to enforce the loan, is insufficient to establish that Defendants made a "false representation of material fact."  Notably, Plaintiffs qualify their allegation "on information and belief," Compl. at ¶26, but offer no underlying facts in support of such "information and belief."

At minimum, each plaintiff should be able to identify to whom they made their payments to, including to whom and when they made their last payment.  <u>See</u> <u>id.</u>, 556 U.S. 662, 129 S. Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will . . .  be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'").  Indeed, three of the plaintiffs – who are or have been debtors in bankruptcy – identified under oath in their bankruptcy schedules the same entities as their creditor who they now assert was not the noteholder.

For example, on his sworn bankruptcy schedules, plaintiff Coyne identified Chase Mortgage "c/o Shapiro and Burson, LLP" as the secured creditor of his mortgage loan, and does not indicate that the loan was disputed in any manner.  See In Re: James William Coyne, E.D. Va. Bky. Case No. 10-18170-SSM, Docket Entry 19, p. 5, Schedule D (Filed November 15, 2010) (attached as Exhibit D).  Likewise, on her sworn bankruptcy schedules, plaintiff Romero identified Bank of American Home Loan Servicing, L.P. as the secured creditor of her first deed of trust loan, and does not indicate that the loan is disputed in any manner.  See In Re: Monica Romero, E.D. Va. Bky. Case No. 10-17918-BFK, Docket Entry 15, p. 10, Schedule D (Filed October 20, 2010) (Exhibit E).  And, on his bankruptcy schedules, plaintiff Song identified "UP/Regionsm" as the secured creditor of his mortgage, and did not indicate that the loan is disputed in any manner.  See In Re: Hyun s. Song, E.D. Va. Bky. Case No. 10-17474-RGM, Docket Entry 1, p. 14, Schedule D (Filed September 2, 2010) (Exhibit F).  Interestingly in Song's Chapter 7 bankruptcy, the Court granted Regions Bank DBS Regions Mortgage Relief from the automatic stay to proceed with foreclosure, See Id. at Doc. 17 (October 26, 2010) (Ex. F, p. 14), which Song expressly did not oppose.  See id. Doc. 12 (Filed October 8, 2010), (Ex. F, p.13).[4]

---

[4] Song also claims that Regions Bank, does not exist.  Compl. at ¶151.  Attached as Exhibit G is the FDIC information for such entity.

Moreover, not one of the three bankruptcy debtors identified any claims against Defendants on their bankruptcy schedules.  See Ex. D, E, F, respectively, Schedule B, Item 21.[5]

Consequently, the mere statement that the entity executing the Appointment was not the Noteholder, absent more, does not "nudge" such claims "across the line from conceivable to plausible."  See Iqbal, 129 S. Ct. at 1950-51.  Because of this defect, the remaining claims, which are premised upon this core theory, must also fail.  Thus, not only is the fraud claim insufficiently pled, but the other claims resting upon the purported "misrepresentation", suffer the same pleading defect.

A.      **Plaintiffs attack on their respective Appointments fails to impugn its validity, both substantively and as to execution.**

Substantively, Plaintiffs claims are insufficient to attack each Appointment.  Each of the Appointments indicates that it is executed by the holder or agent of the holder.  See Ex. B. Virginia law provides that a foreclosure may be prosecuted by the beneficiary under the deed of trust, see Va. Code §55-59(9) which would include any nominee of the lender such as MERS, Tapia v. United States Bank, N.A., 2010 U.S. Dist. LEXIS 62448, 19-20 (E.D. Va. June 22, 2010), the noteholder or its agent, Horvath v. Bank of N.Y., 641 F.3d 617 (4th Cir. 2011), including loan servicer, see Larota-Florez v. Goldman Sachs Mortgage Co., 719 F. Supp 2d 636, 640-41 (E.D. Va. 2010), aff'd per curium at Appeal No. 10-1523 (4th Cir July 28, 2011), or a

---

[5] Accordingly, these plaintiffs lack standing to prosecute any claims existing at the time of their bankruptcy filing but not scheduled in their bankruptcy case.  And in a Chapter 7 case, only the trustee has standing to prosecute a case.  See Solt v. Credit Prot. Ass'n, L.P. (In re Solt), 425 B.R. 263, 266, 2010 Bankr. Lexis 743 (Bankr. W.D. Va. 2010) ("Since the Court has found that the FDCPA Claim is property of the estate, the Trustee is the only party with the authority to prosecute the claim. Therefore, the Plaintiff lacks standing to bring this action and there is no subject matter jurisdiction.").

non-holder in possession with rights of holder.  See Va. Code 8.3A-301(ii); Va. Code 8.3A-203(b).[6]

      **i.**      **A party secured by the deed of trust may foreclose.**

Virginia Code §55-59(9) specifically authorizes either the beneficiary or noteholder, or holder of a majority interest in a note, to appoint a substitute trustee on the deed of trust securing such debt.

Specifically, that statute provides:

> The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees for any reason and, regardless of whether such right and power is expressly granted in such deed of trust, by executing and acknowledging an instrument designating and appointing a substitute. When the instrument of appointment has been executed, the substitute trustee or trustees named therein shall be vested with all the powers, rights, authority and duties vested in the trustee or trustees in the original deed of trust. . . .
> .

Va. Code §55-59(9).

Addressing a foreclosure challenge under Virginia law, the United States Court of Appeals for the Fourth Circuit explained that "[n]egotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it."  Horvath v. Bank of N.Y., N.A., 641 F.3d 617, 621 (4th Cir. 2011); see also Bolouri v. Bank of America, N.A. et al., No. 1:10-cv-

---

[6] Generally, the terms of industry standard promissory notes secured by residential real estate indicate that "[t]he lender or anyone who takes this Note by transfer and who is entitled to receive payment is called the 'noteholder,'" which would allow enforcement by a non-holder in possession with rights of a holder.  See Va. Code 8.3A-301(ii); Va. Code 8.3A-203(b).

00225-LO-TCB (E.D. Va. August 24, 2010) aff'd per curiam at Appeal No. 10-2069 (4th Cir August 11, 2011).

Likewise, in Rosales v. Countrywide Home Loans, Loudoun Co. Cir Ct. Case No. 54255 (2010), attached hereto as Exhibit H, Judge Horne determined that a note endorsed in blank may be enforced by its possessor, whoever that may be.  Specifically, Judge Horne held that such a possessor who may only be a loan servicer has the right enforce the rights and remedies contained in the Note and the Deed of Trust that secures it, including the right to foreclose on the Property.  See id.  Although Rosales is an unreported case from the Circuit Court of Loudoun County, Mr. Rosales appealed.  The Supreme Court of Virginia denied his appeal, yet gave an unusual explanation for doing so, specifically noting its agreement with Judge Horne's analysis, explaining:

> Upon review of the record in this case and consideration of the argument submitted in support of and in opposition to the granting of an appeal, the Court is of the opinion there is no reversible error in the judgment complained of.  Accordingly, the Court refuses the petition for appeal.

See Pedro Rosales v. Countrywide Home Loans n/k/a/ Bank of America Mortgage, Supreme Ct. of Virginia Record No. 102289 (April 12, 2011) (emphasis added) (Ex. H).

**ii.     Even a loan servicer may foreclose.**

Similarly, in Rosales, addressing Countrywide's right to foreclose as a loan servicer, the court found such authority both under contract and agency law:

> In addition to Countrywide's rights under the Uniform Commercial Code, it also has the authority under the Adjustable Rate Note and Deed of Trust to exercise the rights and remedies set forth therein. The Adjustable Rate Note states: "The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under the Note is called the 'Note Holder.'"  Adjustable Rate Note ¶1.  As stipulated, Countrywide possesses the Adjustable Rate Note. Moreover, Countrywide as loan servicer, has the right to collect (or

receive) payments due under the Adjutsable Rate Note and the Deed of Trust.  <u>See</u>, Deed of Trust ¶20.  Hence, Countrywide is the "Note Holder,"  "The Note Holder may enforce its rights under the [the Adjustable Rate Note]" against Plaintiff, including the rights and remedies contained in the Deed of Trust.  Adjustable Rate Note ¶9.  Indeed, the rights and remedies in the Deed of Trust protect the Note Holder from possible losses that occur if Plaintiff fails to make payments under the Adjustable Rate Note.  Adjustable Rate Note ¶11.  <u>Therefore, Countrywide, as the Note Holder, has the right to foreclose on the Property.  Even if Countrywide was not the Note Holder, it is still authorized under the contract and agency law, to initiate foreclosure proceedings on the Property.</u>

<u>Id.</u> at *6-7 (emphasis added) (Ex. H). Likewise, this Court has also determined that loan servicers have the authority to foreclose on property that secured the loans that they service.  <u>See Larota-Florez v. Goldman Sachs Mortgage Co.</u>, 719 F.Supp 2d 636, 640-41 (E.D. Va. 2010), <u>aff'd</u> per curium at Appeal No. 10-1523 (4th Cir. July 28, 2011) ("As servicer, Litton has the right to collect payments <u>on behalf of the holder</u> and the right to foreclose upon default. Therefore, Litton's appointment of Professional as substitute trustee under the Deed of Trust was authorized as a matter of contract and agency law.") (emphasis added).

       **iii.**     **MERS may proceed with foreclosure.**

To the extent that Plaintiffs assert that at least one of the Appointments was executed by MERS, <u>see</u> Compl. at ¶85 (Plaintiff Barnett), this Court has recognized that MERS is entitled to prosecute the foreclosure, and rejected challenges to MERS right to appoint a substitute trustee, where like here, it was named in the Deed of Trust as beneficiary as nominee for the lender and its assigns.  <u>See Tapia v. United States Bank, N.A.</u>, 718 F. Supp. 2d 689, 696-97 (E.D. Va. 2010), <u>aff'd</u> <u>per</u> <u>curium</u> at Appeal No. 10-1856, 2011 U.S. App. Lexis 15845 (4th Cir. August 1, 2011).

Specifically, in <u>Tapia</u>, the borrowers challenged a foreclosure with a similar claim to the one advanced here by Plaintiff Barnett, which this Court rejected.  In that case, which involved a deed of trust with identical provisions regarding MERS, the Court explained:

> The Court finds this argument unavailing because the Deed of Trust authorized MERS to foreclose the Property in the event that Plaintiffs defaulted on the loan. The Deed of Trust states that "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns  of MERS."  The Deed of Trust also provides "if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing and canceling this Security Instrument."  Under the terms of the Deed of Trust, MERS has two roles: beneficiary and nominee for Lender. By signing the Deed of Trust, Plaintiffs agreed that MERS, as nominee for Lender and Lender's successors and assigns, had the right to foreclose the Property and recognized that MERS could take any action required of Lender. Furthermore, Plaintiffs make no legally-supported argument and plead no facts in the Amended Complaint as to why MERS as nominee did not have the right to foreclose and sell the Property in accordance with law or custom.  As such, Plaintiffs' allegation that none of Defendants have the authority to enforce the Deed of Trust is untenable.

<u>Id</u>.

A copy of Ms. Barnett's deed of Trust is attached as <u>Exhibit I</u>.  As indicated, MERS is named as nominee of the lender and its successors and assigns.  Thus, Ms. Barnett's challenge to MERS's involvement is untenable.

**iv.    By failing to identify who Plaintiffs assert is the "true noteholder" and loan servicer of their respective loans, Plaintiffs fail to set forth a plausible claim.**

Here, on its face, Plaintiffs' claim that the Appointment is invalid fails to account for other persons who may lawfully foreclose on the property.  Thus, assuming *arguendo*, that the identified entity on the Appointment was not the holder of the note, but merely a loan servicer, or

nominee such as MERS, the Complaint is insufficient to set forth a plausible claim based upon the invalidity of the Appointment.

Indeed, the deficiencies of Plaintiffs' claims are comparable to those in <u>Twombly</u>, as explained by <u>Iqbal</u>, in which the complaint alleged that defendants 'parallel course of conduct . . . to prevent competition' and inflate prices was indicative of the unlawful agreement alleged. <u>Iqbal</u>, 129 S. Ct. 1937, 1950-51, (<u>discussing</u> <u>Twombly</u>).  Addressing such defects, the Supreme Court explained how such allegations, which may be consistent with unlawful conduct, was also consistent with lawful conduct, and therefore insufficient as a matter of pleading to satisfy the plausibility standard:

> <u>Acknowledging that parallel conduct was consistent with an unlawful agreement, the Court nevertheless concluded that it did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior.</u> Id., at 567, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Because the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement, the Court held the plaintiffs' complaint must be dismissed. Id., at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929.

<u>Iqbal</u>, 129 S. Ct. at 1950-51 (emphasis added).  Likewise, here, absent specific allegations concerning the "true noteholder" and/or loan servicer of Plaintiffs, such claims fail to meet the plausible standard.

**B.    Plaintiffs' claim that Defendants misrepresented that the note was unavailable is immaterial, and Plaintiffs fail to articulate how they reasonably relied upon such statement.**

Plaintiffs assert that Defendants misrepresented that the original note was unavailable. <u>See</u> <u>e.g.</u> Compl. at ¶77.  Unclear is how such "misrepresentation", if true (for purposes of argument), could harm them, particularly as such notice would give them additional procedural protections.  Under Virginia law, where the original promissory note is unavailable, a foreclosure

sale may proceed provided that the borrower is notified that the promissory note is lost or for any reason cannot be produced, and the trustee obtains an affidavit from the secured party to that affect.  <u>See</u> Va. Code §55-59.1(B)[7].

Under that statute, if the borrower believes that he may be subject to more than one claim under the promissory note, he can petition the Court for adequate protection.  Absent a request and grant of adequate protection, where an affidavit is furnished to the trustee, Section 55-59.1 provides that "[i]f the trustee proceeds to sale, the fact that the instrument is lost or cannot be produced shall not affect the authority of the trustee to sell or the validity of the sale."  <u>Id.</u>

---

[7] Specifically, Virginia Code §55-59.1(B) provides:

> B. [1] If a note or other evidence of indebtedness secured by a deed of trust is lost or <u>for any reason</u> cannot be produced and [2] the beneficiary submits to the trustee an affidavit to that effect, [3] the trustee may nonetheless proceed to sale, [4] provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee. [5] <u>The notice shall further advise the person required to pay the instrument that if he believes he may be subject to a claim by a person other than the beneficiary to enforce the instrument, he may petition the circuit court of the county or city where the property or some part thereof lies for an order requiring the beneficiary to provide adequate protection against any such claim.</u> [6] If deemed appropriate by the court, the court may condition the sale on a finding that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. [7] Adequate protection may be provided by any reasonable means. [8] If the trustee proceeds to sale, the fact that the instrument is lost or cannot be produced shall not affect the authority of the trustee to sell or the validity of the sale.

Va. Code § 55-59.1 (alterations added, emphasis added).

Obviously, in cases where the original note furnished, an affidavit is not necessary.  See Horvath, 641 F.3d 617.

Here, to the extent that Plaintiffs complain that they received such notice, then they had the opportunity to dispute the lender's right to foreclose if they truly believed that they were not the correct entity, by petitioning the circuit court for adequate protection.  Tellingly, plaintiffs do not allege that they availed themselves of such remedy.  Given that the Plaintiffs (who received the subject notice) have forgone and sat on their statutory rights, they cannot plausibly allege that they were damaged or harmed in this matter, especially given that they have not pled specific facts evidencing that the statement in the notice was not true, i.e., that the Defendants claimed the note was unavailable when it really was not.  Nor can they establish reliance, or damages from such statement. Thus, in sum, Plaintiffs claims that Defendants misrepresented that the notes were unavailable fails to set forth a plausible claim.

> **C.    Plaintiffs' challenge to the form of the Appointments and Trustee's Deeds misconstrue Virginia law, fail to impugn such documents as a matter of law, and fail to set forth a viable claim of fraud.**

Plaintiffs' challenge to the Appointment and the Trustee's Deed, grounded in fraud and misrepresentation, fail to impugn such documents on that basis.  Given that such instruments are acts and/or grants rather than affidavits, the legal sufficiency of such documents do not depend on the personal knowledge or standing of the signatory,[8] and therefore plaintiffs allegations are

---

[8] In Tapia, this Court also rejected the plaintiff's argument challenging the lender's standing in the context of a Virginia foreclosure:

> Plaintiffs argue that Defendants could not demonstrate standing to institute the foreclosure because they could not prove Article III injury. The Court rejects Plaintiffs' standing argument to the extent that Plaintiffs use the term "standing" to refer to the requirement that a secured party first prove in court its right to initiate a foreclosure before the procedure commences. The fundamental flaw in Plaintiffs' allegation is that Virginia is a non-judicial foreclosure state. Sections

insufficient to impugn such documents, and immaterial to the validity of the instrument. Cf. Harkins v. Forsyth, 38 Va. 294, 305 (Va. 1840) ("The deed then is made to depend, not upon the truth of the certificate, but upon its existence, and its delivery to the clerk; and if so, the enquiry whether it be true or false is an immaterial enquiry.")

As an initial matter, as explained above, the Appointment and the Trustee's Deeds are each acts and not an affidavits.  Pursuant to Virginia Code §55-59(9), the person making the appointment does so by "executing and acknowledging an instrument designating and appointing a substitute." Id. (emphasis added);[9] cf. Peatross v. Gray, 181 Va. 847, 861, 27 S.E.2d 203, 210 (1943) ("No acknowledgment of this deed was necessary in order to convey the title. The deed operated as a conveyance without any acknowledgment. Code, section 5146. Acknowledgment is necessary for recordation [Code, section 5204], not to pass title. Title passes by the execution and delivery of the deed.") (quoting Gannaway v. Federal Land Bank, 148 Va. 176, 179, 138 S.E. 564 (1927)

Indeed, it appears that Plaintiffs confuse an acknowledgement, which is all that is required for an appointment or conveyance, with an oath.  Explaining the distinction between acknowledgments versus oaths, the Supreme Court of Virginia explained:

> There is a marked difference between acknowledging a signature and signing a document under oath. An acknowledgment merely verifies that the person named executed the document in question.

---

55-59.1 through 55-59.4, which set forth the procedural requirements for a non-judicial foreclosure, do not require an interested party to prove "standing" in a court of law before initiating the foreclosure process.  The Court therefore rejects Plaintiffs' "standing" argument.

Tapia, 718 F.Supp. 2d at 687-98 (citations omitted).

[9] Upon execution, "the substitute trustee or trustees named therein shall be vested with all the powers, rights, authority and duties vested in the trustee or trustees in the original deed of trust. . ."  Va. Code §55-59(9).

> Code § 55-118.3. By swearing to a document, on the other hand, one vouches that the contents of the writing are true.

Cumbee v. Myers, 232 Va. 371, 374, 350 S.E. 2d 633, 634 (1986) (citations omitted).  Under Virginia law, an acknowledgement is all that is required for recordation, and under the Appointment, an acknowledgement is all that was given.

Moreover, contrary to plaintiffs' claim that the document must be notarized on the date signed, as explained in Cumbee, "[a] certificate of acknowledgment signifies that the person acknowledging the document stated in the presence of the notary that the document was his or her act. The person may either have already signed the document or the person may sign the document in the notary's presence." Id. at 634, 350 S.E.2d at 634.

Nor can Plaintiffs impugn the document by attacking the notary.  As an initial matter, "the taking and certifying of an acknowledgment by a notary public is a judicial act." Donohoe Constr. Co. v. Mt. Vernon Associates, 235 Va. 531, 538, 369 S.E. 2d 857, 861 (1988).  Further, as explained in Cumbee, "[T]he policy of the Commonwealth is to look with great leniency on certificates of acknowledgment and to uphold them if possible. . . . Obvious technical errors in a certificate of acknowledgment will be disregarded; a substantial compliance with the acknowledgment statute is all that is required. . . .  If it is reasonably certain that the grantor made the acknowledgment of the instrument in question that is sufficient, because the object of the statute is that the notary . . . shall know and certify that the person whose name is signed to the instrument is the person who is acknowledging it." Cumbee, 232 Va. at 373, 350 S.E. 2d at 634 (internal citations, quotations, and alternations omitted); accord Geil v. Geil, 101 Va. 773, 774, 45 S.E. 325, 326 (1903)

Accordingly, where "it is 'reasonably certain' that the grantors acknowledged the deed, there has been a substantial compliance with the statute [requiring acknowledgement of deeds]."

Cumbee, 232 Va. at 374, 350 S.E. at 635.   Indeed, under Virginia Code §17.1-223, "[a] document which appears on its face to have been properly notarized in accordance with the Virginia Notary Act (§ 47.1-1 et seq.) shall be presumed to have been notarized properly and may be recorded by the clerk."   Thus, in Harkins v. Forsyth, 38 Va. 294, 308 (1840), the Virginia Court explained: "Though a mere witness may be admitted to defeat his own attestation, it by no means follows that a public officer should be permitted to defeat a solemn and public act, by contradicting his own certificate of the manner in which he has performed it.") (emphasis added); accord Brame v. Nolen, 139 Va. 413, 420 (1924).

Indeed, in Clinchfield Coal Corp. v. Steinman, 223 F. 743, 745-746 (4th Cir. 1915), the Fourth Circuit barred testimony that the clerk sometimes took acknowledgements out of his office, which would contravene an 1887 Virginia statute, explaining "[t]he statute does not require that the acknowledgment should contain the statement that it was taken in the clerk's office, and the presumption is that the officer did his duty and took it in his office. . . .Testimony of the clerk that he sometimes took acknowledgments out of his office was clearly inadmissible. Property rights should not be imperiled by the mere possibility that the titles were not executed as required by law. Besides, in Virginia an officer is not allowed to impeach his own certificate." (internal citations omitted, emphasis added).   Here, the document as a whole appears on its face to be properly executed and acknowledged by a judicial officer, and therefore is not subject to the borrower's attack.

In In Re: Mortgage Electronic Registration Systems (MERS) Litigations, D. Ariz 2:09-md-02119 (October 3, 2011) Dock. No. 1602, 2011 U.S. Dist. Lexis 117107, a consolidated case involving 72 foreclosures spanning four non-judicial foreclosure states, the United States District Court for Arizona rejected challenges to appointments and assignments in granting the

defendant's motion to dismiss, noting that the borrowers lacked standing to challenge such documents. See id. At issue was the involvement MERS, and allegations that "Defendants caused to be recorded various assignments, substitution of trustees, notices of trustee's sales and trustee's deeds upon sale, which were false becauss they 'contained false claims, or were otherwise invalid based on MERS' status of making the assignments as 'beneficiary'' . . . [and] that the assignments were 'robosigned,' that is notarized in blank prior to being signed on behalf of MERS.  Id. at page 7.  The federal court rejected the claims for several reasons.

First, addressing the "robosigning" allegations, the federal court explained that such claims fail absent allegations that the documents were not authorized, and were signed without knowledge of the representations contained in the document.  See id.  Specifically, the Court explained:

> [T]he allegations of robosigning do not state a claim for two reasons. In the first place, Plaintiffs have not pled sufficient facts that parties who are represented to have signed the MERS Assignments, "did not sign the document, and/or did not have the authority to sign the document, and/or did not have knowledge of the representation contained in the document." These legal conclusions are not supported by sufficient factual pleading.

In Re: MERS Litigations, p.12, 2011 U.S. Dist. Lexis 117107, *42 (Emphasis added).

Further, the Arizona federal court determined that, even if the borrower could assert that the documents were executed without authorization or knowledge of the signatory, the borrower lacked standing to challenge an assignment between the lender and MERS:

> Yet, even if these allegations were well pled, Plaintiffs lack standing to challenge the validity of the MERS assignments. Even if an assignment were voidable, an action to declare an assignment void could only be brought by someone who can demonstrate a concrete and particularized injury in fact that is fairly traceable to the challenged assignment. No such injury is alleged. Thus, Plaintiffs, as third-party borrowers, are uninvolved and unaffected by the alleged Assignments, and do not possess standing to assert a

claim based on such. <u>See</u> <u>Bridge v. Aames Cap. Corp.</u>, 2010 WL 3834059, at *3 (N.D. Ohio, Sept. 29, 2010) ("Borrower certainly has an interest in avoiding foreclosure. But the validity of the assignments does not affect whether Borrower owes its obligations, but only to whom Borrower is obligated . . .).

<u>Id.</u>, 2011 U.S. Dist. Lexis 117107, *43.

Likewise, in <u>Wolf v. Fannie Mae,</u> 2011 U.S. Dist. Lexis 135259, 26-29 (W.D. Va. Nov. 23, 2011), the United States District Court for the Western District of Virginia rejected an similar attack upon an appointment that claimed the appointment was incomplete when executed, noting that Plaintiff failed to allege that the signature the appointment was forged or that the document taken as a whole misrepresented the intentions of the lender or trustee. <u>See</u> <u>id.</u> ("For example, Wolf does not allege that the signature on the second page was forged or that the document taken as a whole misrepresented the intentions of either BAC or PFC."). Indeed, in <u>Wolf</u>, the Court rejected a fraud claim premised upon an attack upon the appointment, explaining: "That the appointment of PFC as substitute trustee may have suffered from procedural irregularities—a contention that Defendants unequivocally deny—does not make it a false representation as required by Virginia law, nor one intended to mislead Wolf. Further, Wolf did take action to prevent the foreclosure sale, albeit belatedly, by requesting rescission of the note pursuant to TILA. Indeed, by the time PFC entered the scene, Wolf had already fallen into arrears on the note. Therefore, Wolf simply cannot argue that she relied on any misrepresentations to her detriment." <u>Id.</u>

Here, there is no allegation that the document is a forgery, or that such document was not authorized or executed on behalf of the named entity, or that the document is facially defective. As indicated above, Plaintiffs challenge to the entity's right to foreclosure is insufficiently pled, and Plaintiffs' demand that the signatory and notary have personal knowledge or "standing",

seeks to impose requirements inconsistent with Virginia law, that are immaterial to the validity of the documents.  Thus, Plaintiffs challenge to the Appointment, and for the same reasons the Trustee's Deed, are not viable, and any claim predicated upon its ineffectiveness must be rejected.

    **II.    Plaintiffs' breach of fiduciary duty claim fails because Virginia Code expressly provides that an attorney for the lender may serve as trustee. (Count VIII).**

Under Count VIII, Plaintiffs assert a breach of fiduciary claim, which does not delineate between S&B and PFC.  Thus, as a threshold matter, because S&B is a law firm and does not act as trustee, it owes no fiduciary duty Plaintiffs.  Plaintiff asserts that there is a continuity of ownership between PFC and S&B [and] its shareholder, executives and/or officers consist of many of the same persons employed by Shapiro and Burson."  Compl. at ¶34.  Therefore, according to plaintiffs, "[n]either is therefore an impartial or neutral 'substitute trustee.'"  Compl. at ¶34.

However, Virginia Code §26-58 expressly provided that an attorney for the lender may serve as trustee.  That section provides:

> The mere fact that a trustee in a deed of trust to secure a debt due to a corporation is a stockholder, member, employee, officer or director of, or counsel to, the corporation, <u>does not disqualify him from exercising the powers conferred by the trust deed nor does it render voidable a sale by such trustee in the exercise of the powers conferred on him by the trust deed so long as he did not participate in the corporation's decision as to the amount to be bid at the sale of the trust property</u>. Moreover, if the lender secured by the deed of trust bids the amount secured, including interest through the date of sale and costs of foreclosure, the trustee's participation in fixing the bid price by the party secured shall not be deemed improper and such sale shall not be rendered voidable solely by reason of his participation. . . .

Va. Code §26-58.  Accordingly, Count VIII must be dismissed.

**III.    Plaintiffs' conspiracy claim (Count XIX) is insufficiently plead, based on Plaintiffs' faulty core premise, and is not viable, as alleged, due to the intracorporate immunity doctrine.**

Plaintiffs' conspiracy claims fail for the same reason that the fraud claims fail. "A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful." <u>Hechler Chevrolet, Inc. v. General Motors Corp.</u>, 230 Va. 396, 402, 337 S.E.2d 744 (1985).  Plaintiffs allegations fail to sufficiently assert an unlawful act, or unlawful means.  Moreover, given that S&B and PFC are alleged to have a continuity of ownership, Compl. at ¶34, it is unclear how it can conspire with itself, particularly to the extent that S&B serves as PFC's counsel.  <u>See</u> <u>Cvent, Inc. v. Eventbrite, Inc.</u>, 739 F. Supp. 2d 927, 938-39 (E.D. Va. 2010).

In <u>Cvent</u>, this Court explained the protection afforded by the intracorporate immunity doctrine:

> Eventbrite moves to dismiss plaintiff's state-law conspiracy claims on the ground that, simply put, one cannot conspire with oneself. Cvent alleges a conspiracy between only two actors: Eventbrite and Stephan Foley. Specifically, Cvent alleges that Eventbrite hired and paid Foley to scrape data from Cvent's website for use on Eventbrite's website. Courts have repeatedly held that "[a]cts of corporate agents are acts of the corporation itself." <u>ePlus Tech., Inc. v. Aboud</u>, 313 F.3d 166, 179 (4th Cir. 1997) (<u>citing</u> <u>Bowman v. State Bank of Keysville</u>, 229 Va. 534, 331 S.E. 2d 797, 801 (Va. 1985)). Virginia courts have also specifically adopted the intracorporate immunity doctrine for Virginia conspiracy laws. <u>See</u> <u>Fox v. Deese</u>, 234 Va. 412, 362 S.E. 2d 699, 708, 4 Va. Law Rep. 1248 (Va. 1987). As a result, it is black letter law that a claim that a corporation has conspired with its own agent fails as a matter of law.

<u>Id.</u>  Accordingly, the Conspiracy claim must be dismissed.

**IV.  Plaintiffs' have no conversion claim as PFC's duty arises under the deed of trust, S&B owes no duty, and such claim is insufficiently plead and based on Plaintiffs' faulty core premise (Count XX).**

Under the guise of a conversion claim, Plaintiffs allege that Defendants "[w]rongfully exercised dominion and control over the proceeds of the foreclosure sale."  Compl. at ¶195. Such claims are predicated on the challenge to the foreclosure sale, and suffer the same defects as the fraud claim.  Moreover, only three of the ten Plaintiffs were foreclosed (Andrade, Shim, and Whipple), and Plaintiff Shim consented to such foreclosure, thus Shim and the remaining plaintiffs cannot have a conversion claim.

Notably, a conversion claim, requires the wrongful deprivation of personal property or goods. See Universal C. I. T. Credit Corp. v. Kaplan, 198 Va. 67, 75, 92 S.E.2d 359, 365 (1956). Further, as to Andrade, Shim, and Whipple, "[t]o recover for the tort of conversion, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract."  See Condo. Servs. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc., 281 Va. 561, 574, 281 Va. 561, 574 (Va. 2011).  In a foreclosure sale, the duties owed by the trustee in connection with the foreclosure sale arise under the deed of trust and by statute.  Plaintiffs' claims against S&B, presuppose PFC's liability.  Moreover, the borrower has no direct claim to the proceeds of the foreclosure sale, as they are remitted to the secured party.  Here, there is no claim that the secured party did not receive such funds, or that such funds were not credited to the debt, and therefore there is no basis to assert a conversion claim.

**V.  Plaintiff's FDCPA claims are insufficient and/or barred as a matter of law.**

For the same reasons that Plaintiffs' fraud claims and challenges to the Appointments are not viable, Plaintiffs' claims under Section 1692e of the Fair Debt Collection Practices Act

(FDCPA), which govern false or misleading representations (Counts I through V), as well as Counts VI and VII are not valid, not properly plead, and are in many instances time-barred as a matter of law.[10]  These claims too rest upon Plaintiffs' faulty core premise.

For example, assuming *arguendo* that Defendants constitute debt collectors under the FDCPA, Plaintiffs claim that Defendants failed to disclose to Plaintiffs the creditor(s) to whom the debt was owed within five days of the initial communication, Compl. at ¶43 (Count I) is premised upon the core contention that the entities who appointed PFC were not entitled to foreclose and therefore suffers the same defect as Plaintiffs' fraud claim.  Any claim that "no creditor was disclosed" is also belied by Exhibit A.  See Wolf, 2011 U.S. Dist. LEXIS 135259 at n. 9 ("Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." (citing inter alia United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004))).  Moreover the initial communication does not even use the term note holder, rather it uses the term creditor, and plaintiffs never disputed the same.  On the contrary, Plaintiffs Coyne, Song, and Romero's claims are undermined by their sworn bankruptcy statements.

---

[10] In Goodrow v. Friedman & MacFadyen, P.A., 788 F. Supp. 2d 464, 472 (E.D. Va. 2011), this Court overruled a motion to dismiss where a deed was alleged to impermissibly indicated that Fannie Mae was an affiliate of First Horizon.  There is no such allegation in the present complaint, not did the was the Goodrow court presented with argument distinguishing the act of conveyance from representation.  Rather, in that case, the trustee argued that it was not a debt collector and therefore exempt from the FDCPA. Here, assuming *arguendo* that the FDCPA applies to foreclosures, it would only apply to communication regarding the debt, 15 U.S.C. 1692a(2), and then only where representations are made in connection with such debt. 15 U.S.C. 1692e.  Indeed, although the deed recites that the borrower is in default, Plaintiffs do not allege that they were not in default, moreover, any such representation is not made in connection with collection of such debt, but to convey property.  For the conveyance is to grantee, and to the extent a recital is considered a representation, it would be one to the grantee, not the borrower, and thus not one made to deceive or mislead the borrower.  Further, the recitals in the Appointment are at most representations made by the secured party, to appoint a trustee, a right reserved to the lender.

As to Plaintiffs' claim that the Defendants misrepresented the character, amount, or legal status of the debt, Compl. at ¶46 (Count II), there is no allegation that the debts were not in default, and neither are there any facts properly pled, for the reasons discussed above to set forth a viable claim.  Likewise, there are no properly pled allegations to support Plaintiffs' allegation that Defendants made a "false representation of any services rendered or compensation that may be received by any debt collector for the collection of the debt."  Compl. at ¶40 (Count III).  Nor are there any viable facts alleged that Defendants "threaten[ed] to take any action that cannot be legally taken or that is not intended to be taken."  Compl. at ¶52 (Count IV).  Or any viable facts alleged that Defendants "used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  Compl. at ¶55 (Count V).  Or any viable facts alleged that Defendants engaged in the "collection of any amount not expressly authorized by agreement creating the debt or permitted by law."  Compl. at ¶58 (Count VI).  To that end, plaintiffs do not dispute the amount owed, or that debt is in default.  Nor are there any facts alleged that Defendants took "non-judicial act[s] to dispossess or disable property" Compl. at ¶61 (Count VII). Merely, parroting the provisions of the FDCPA without factual support does not state a cause an action under the FDCPA.  See e.g. Rozier v. CitiMortgage, Inc., 2011 U.S. Dist. Lexis 71715 (E.D. Va. July 5, 2011) ("Although the FDCPA does require an initial communication from a debt collector to include a notice regarding the debtor's right to dispute the debt and be presented with verification, the plaintiffs here have not alleged that the Notice of Foreclosure Action was an initial communication from Wittstadt.").

### A.      Several of the Plaintiffs claims are time-barred under the FDCPA.

To the extent that Plaintiffs take issue with communications identified in FDCPA, any such claim that occurred more than one-year before the date of filing of this action is now time-

barred.  See 15 U.S.C. §1692k(d) ("An action to enforce any liability created by this title [15

USCS §§ 1692 et seq.] may be brought in any appropriate United States district court without

regard to the amount in controversy, or in any other court of competent jurisdiction, within one

year from the date on which the violation occurs.).  Thus, as indicated in the chart in the

statement of facts several of the plaintiff claims are time-barred under the FDCPA in connection

with the initial communication, including Plaintiff Andrade, Barnett, Coyne, Maeba, Romero,

Shim, Song, and Whipple.

Moreover, assuming *arguendo* that Plaintiffs could rely upon the Appointments as a basis

for their FDCPA claims (which in any event is insufficiently plead for the same reasons as the

fraud claim), once again based upon the chart, Plaintiffs' Barnett, Coyen, Romero, Shim, and

Whipple appear to be time-barred.  As would any claim premised upon Plaintiff Shim's deed.

### VI.   Several Plaintiffs' state law claims are also time-barred.

To the extent that Ms. Barnett and Mr. Coyne purport to assert fraud claims, conversion

claims, breach of fiduciary duty, and conspiracy claims, based on the chart above, such claims

would also be time barred by the two-year limitations period under Virginia Code §8.01-243,

which provides "[u]nless otherwise provided in this section or by other statute, every action for

personal injuries, whatever the theory of recovery, and every action for damages resulting from

fraud, shall be brought within two years after the cause of action accrues." Va. Code §8.01-243.

Cf. Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity, 266 Va. 455, 467 n.4, 587 S.E.2d

701, 709 n.4 (2003)

WHEREFORE, Defendants, Shapiro & Burson, LLP and Professional Foreclosure

Corporation of Virginia by counsel, hereby requests that the Court enter an Order dismissing the

Complaint with prejudice, awarding Defendants their fees in responding to this Complaint, and

awarding Defendants such further relief as the Court deems appropriate.

<div style="margin-left: 40%;">

Respectfully Submitted,
SHAPIRO & BURSON, LLP
PROFESSIONAL FORECLOSURE
CORPORATION OF VIRGINIA
Defendants, by counsel


By:     /s/ Bizhan Beiramee_____
Bizhan Beiramee,  Esquire (VSB # 50918)
Bizhan Beiramee,  Esquire, P.C.
6663 B Old Dominion  Drive, 3rd Floor
McLean, Virginia 22101
Phone: (703) 483-9600
Fax:     (703) 483-9599
Email: bbeiramee@beiramee.com
*Counsel for the Defendants*

</div>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of December, 2011, I electronically filed the

foregoing pleading with the Clerk of the Court using the CM/ECF System, which will then send

a notification of such filing (NEF) to the following:

> Matthew J. Erausquin (VSB # 65434)
> Leonard A. Bennett (VSB #37523)
> CONSUMER LITIGATION ASSOCIATES P.C
> 1800 Diagonal Road, Suite 600
> Alexandria, VA 22314
> Phone: (703) 273-7770; Fax: (888) 892-3512
> matt@clalegal.com
> lenbennett@clalegal.com
> Counsel for the Plaintiffs
>
> Dale W.Pittman, VSB #15673
> THE LAW OFFICE OF DALE W. PITTMAN, P.C.,
> The Eliza Spotswood House
> 112-A West Tabb Street
> Petersburg, VA 23803
> Tel: (804) 861-6000; Fax: (804) 861-3368
> dale@pittmanlawoffice.com
> Counsel for the Plaintiffs
>
> Kristi Cahoon Kelly, VSB # 72791
> SUROVELL, ISSACS, PETERSEN & LEVY, PLC
> 4010 University Drive, Suite 200
> Fairfax, VA 22030
> Tel: (703) 277-9774; Fax: (703) 591-9285
> kkelly@siplfirm.com
> Counsel for the Plaintiffs
>
> By:      /s/ Bizhan Beiramee_____
> Bizhan Beiramee, Esquire (VSB # 50918)
> Bizhan Beiramee, Esquire, P.C.
> 6663 B Old Dominion Drive, 3rd Floor
> McLean, Virginia 22101
> Phone: (703) 483-9600; Fax: (703) 483-9599
> Email: bbeiramee@beiramee.com
> *Counsel for the Defendants*